UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.C., individually and on behalf of J.C.T.,
M.T., individually and on behalf of J.C.T.,

Plaintiffs,

v.

CHAPPAQUA CENTRAL SCHOOL
DISTRICT,

Defendant.

No. 16-CV-3138 (KMK)

OPINION & ORDER

Appearances:

Rachel S. Asher, Esq.
Asher Gaughran, LLP
Armonk, NY
*Counsel for Plaintiffs*

Mark C. Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
Poughkeepsie, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiffs K.C. and M.T. (collectively, "Plaintiffs" or the "Parents"), bring this Action on

behalf of their son, J.C.T. ("C.T."), alleging that Defendant Chappaqua Central School District

("Defendant" or the "District") denied C.T. a free and appropriate public education ("FAPE") for

the 2011–2012 and 2012–2013 school years, in violation of the Individuals With Disabilities

Education Act (the "IDEA"), 20 U.S.C. § 1415 et seq., New York Education Law, N.Y. Educ.

Law §§ 4401, 4404, 4410, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C.

§ 794 et seq., and discriminated against C.T. in violation of Section 504 and Title II of the

Americans With Disabilities Act (the "ADA"), 42 U.S.C. § 12132.  (*See* Compl. (Dkt. No. 1).)

Defendant has moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings with respect to the Fourth and Fifth Causes of Action, relating to the District's alleged discrimination against C.T.  For the reasons to follow, the Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the allegations in the Complaint and are taken as true for purposes of this Motion.

C.T., the child of Plaintiffs, was born in 1999 and was classified by Defendant as a disabled student with emotional disturbance.  (*See id.* ¶¶ 10–11.)  C.T.'s academic struggles sharply escalated in third grade, during which a clinical psychologist evaluated C.T., prescribed medication, and found that some intervention was needed to address "his emotional fragility and unevenly developing skills."  (*Id.* ¶¶ 18–21.)  At this time, Defendant classified C.T. as "Other Health Impaired," but otherwise failed to address C.T.'s emotional and academic needs.  (*Id.* ¶ 22.)  At the age of nine, C.T. was seeing a pediatric psychiatrist and a neurologist and was prescribed additional medication.  (*See id.* ¶ 24.)  In fifth grade, C.T.'s grades dropped and he received negative reviews from his teachers, who cited his inability to do homework and his behavioral problems in the classroom.  (*See id.* ¶¶ 25–26.)  C.T.'s special education teacher wrote a report discussing C.T.'s academic and behavioral problems, but the report was never produced to the Parents.  (*See id.* ¶¶ 26–28.)  Although the Parents and C.T.'s doctors requested that the District provide C.T. with additional academic and emotional support, the District gave no meaningful response to those requests.  (*See id.* ¶ 29.)  In the summer after fifth grade, C.T.'s diagnosis was changed to early onset bipolar disorder and he began to gain weight.  (*See id.* ¶¶ 30–31.)

At the beginning of sixth grade, the District recognized that C.T. had regressed over the summer and acknowledged that he had difficulty working independently and that he had significant limitations with respect to his classroom participation. (*See id.* ¶¶ 32–33.) C.T.'s behavioral problems escalated throughout sixth grade, and his testing scores fell. (*See id.* ¶¶ 35–36.) Despite C.T.'s continuing problems, the District took little action to improve C.T.'s situation, keeping him in mainstream classes with only limited special education support. (*See id.* ¶ 40.) Although C.T.'s aide and teachers knew that C.T. was struggling and discussed his difficulties in internal emails, those concerns were not shared with the Parents. (*See id.* ¶¶ 41–42.) In the summer before seventh grade, C.T. went to day camp, but continued to struggle with his behavioral issues. (*See id.* ¶¶ 44–45.) During the summer, he was twice hospitalized at Four Winds Psychiatric Hospital, and the Parents informed the District of those hospitalizations. (*See id.* ¶¶ 46–49.)

C.T.'s seventh grade year started in 2011 and ran until 2012, and is the subject of this Motion. C.T.'s Individualized Education Program ("IEP") for seventh grade was virtually identical to his IEP in sixth grade: C.T. was kept in large, mainstream classes and only received counseling with a school guidance counselor. (*See id.* ¶ 50.) As the Parents learned in reports that were not disclosed until 2014, C.T. struggled to interact with his fellow students and spent much of the day wandering the halls. (*See id.* ¶ 52.) The District made no effort to address those issues, although the Parents repeatedly asked that the District transfer C.T. to a smaller, therapeutic school. (*See id.* ¶ 53.) C.T. continued to struggle academically, and he largely refused to do homework. (*See id.* ¶ 55.)

At home, C.T.'s behavior became problematic, and the Parents called the police to their home on four occasions during the school year when C.T. became violent and aggressive. (*See*

*id.* ¶ 56.)  Although the Parents informed the District each time they called the police, the District offered no response.  (*See id.* ¶ 57.)  Meanwhile, C.T. began eating compulsively at school and would go into the nurse's office unattended to eat candy out of her cabinet.  (*See id.* ¶¶ 60–61.) The District took no action to address these issues.  (*See id.* ¶ 62.)

According to Plaintiffs, the District repeatedly downplayed the extent of C.T.'s behavioral problems, insisting that those problems occurred only at home.  (*See id.* ¶ 63.) Standardized testing indicated that C.T.'s academic performance continued to drop, and his teachers reported that he struggled to work independently and frequently left class.  (*See id.* ¶¶ 65–67.)  C.T.'s behavior also became more erratic—Plaintiffs point to one instance in which C.T. told them that he had been bullied on the bus, when in fact it was C.T. who had been the aggressor.  (*See id.* ¶¶ 68–69.)  In response, the District recommended that C.T. no longer ride the bus.  (*See id.* ¶ 70.)  No plan was made to address this behavior.  (*See id.* ¶ 71.)  In fact, the District continued to insist to the Parents that C.T. was functioning well and that his placement in mainstream education classes was appropriate.  (*See id.* ¶ 74.)  Despite this representation, the Parents became aware several years later that C.T.'s school counselor was concerned about C.T.'s progress and thought he needed a therapeutic placement, while his aide made several notes about C.T.'s disruptive and erratic behavior.  (*See id.* ¶¶ 75–80.)  Again, no efforts were made to address C.T.'s behavioral issues.  (*See id.* ¶ 81.)

There were other behavioral problems that the Parents allegedly did not become aware of until many years later.  For example, C.T. once told his guidance counselor that he "wanted to kill somebody," and C.T. frequently wandered out of class without permission.  (*See id.* ¶¶ 82–83.)  C.T. missed 197 classes during his seventh grade year, but the Parents claim they did not learn about these absences until later.  (*See id.* ¶ 84.)

The Parents and C.T.'s psychologist, psychiatrist, and private tutor all repeatedly told the District that C.T. required placement in a small, therapeutic school. (*See id.* ¶¶ 91–94.) The District ignored these recommendations, insisting that C.T. was capable of functioning in mainstream classes, and refused to consider placement in a therapeutic school. (*See id.* ¶¶ 95–96.) At the same time, the District failed to develop or implement any meaningful behavioral interventions, and its response to C.T.'s issues was limited to two 30-minute group counseling sessions per month and two documents purportedly designed to help measure and track C.T.'s issues and progress. (*See id.* ¶¶ 97–98.)

In August, the District designed a new IEP for C.T.'s eighth grade year, but the IEP was similar to the seventh grade IEP in many ways and, in the Parents' view, inadequate in the same ways. (*See id.* ¶¶ 102–03.) Frustrated with the District's inaction, the Parents unilaterally placed C.T. at Westfield Day School, a nearby therapeutic day school in Rye, New York, for his eighth grade year (2012–2013). (*See id.* ¶ 106.) C.T.'s behavior and academic progress improved dramatically while at Westfield, and his behavior at home also improved. (*See id.* ¶¶ 108–13.) The next school year, the District acknowledged C.T.'s need for placement in a therapeutic environment and placed C.T. in such an environment. (*See id.* ¶ 114.) The District refused, however, to reimburse the Parents for the expenses they incurred during the 2011–2012 school year, and similarly refused to reimburse C.T.'s tuition at Westfield for the 2012–2013 school year. (*See id.* ¶ 115.)

B. Administrative Proceedings

On May 28, 2014, Plaintiffs filed an administrative due process complaint, seeking, under the IDEA, reimbursement for compensatory education for the District's alleged failure to provide a FAPE during the 2011–2012 school year, and tuition reimbursement for C.T.'s placement at

Westfield during the 2012–2013 school year. Plaintiffs also sought a declaration that the District's IEP violated Section 504 and that the District's conduct constituted discrimination under Section 504 and Title II of the ADA. (*See id.* ¶ 116.) On June 10, 2014, Plaintiffs made an educational records request, through which they received many of the internal teacher and staff communications discussed above. (*See id.* ¶ 117.) As a result, Plaintiffs amended their Due Process Complaint to include a claim that the District failed to provide them adequate information to allow them to participate in the IEP-development process. (*See id.* ¶ 118.)

The independent hearing officer ("IHO") assigned to hear Plaintiffs' due process complaint held hearings on October 16, 21, and November 5, 2014. (*See* Decl. of Rachel Asher, Esq. in Opp'n to Def.'s Mot. on the Pleadings To Dismiss Pl.'s Fourth and Fifth Causes of Action ("Asher Decl.") Ex. C ("Interim Decision") (Dkt. No. 33).) On January 11, 2015, the IHO issued an Interim Decision wherein she determined that the "appropriate mechanism" for raising Section 504 and ADA claims distinct from the IDEA claims would be via the District's Policy 3040, which instructs parents who feel that their child's rights under Section 504 or the ADA have been violated to file a grievance with the District's Assistant Superintendent for Human Resources. (*See id.* at 4; *see also* Aff'n in Supp. of Mot. for J. on the Pleadings as to Pl.'s Fourth and Fifth Causes of Action in the Compl. ("Rushfield Aff'n") Ex. I (Dkt. No. 28).) The IHO then noted that Plaintiffs had, in fact, referred the Section 504 and ADA claims to the appropriate entity. (*See* Interim Decision 4.) The IHO concluded:

> I find that impartial hearing process is not the appropriate venue for resolution of ADA claims; there is no apparent statute or regulation authorizing IDEA Hearing officers to preside over such claims. Neither party has cited to any such authorization. In addition, I find that the parents' § 504 and ADA claims have been properly referred to the Assistant Superintendent via District's Policy 3040.

(*Id.*)

Additional hearings were held on February 26, March 19, 24, and June 17, 2015.  (*See* Asher Decl. Ex. E ("IHO Decision").)  On November 4, 2015, the IHO rendered a final decision, ruling in Plaintiffs' favor on all remaining claims.  (*See id.*; *see also* Compl. ¶ 120.)  In her decision, the IHO dismissed the District's argument that all of the claims arising from the 2011–2012 school year were time barred by the statute of limitations because the due process complaint had not been filed within two years of when the claims accrued.  (*See* IHO Decision 73.)  The IHO reasoned that C.T.'s mother had "established that the basis of their claim did not begin to accrue until 2014 when she became aware that the District withheld material information pertaining to C.[T.]'s education," and concluded that the claim was therefore tolled.  (*See id.*)

The District subsequently appealed the adverse decision to a State Review Officer ("SRO").  (*See* Compl. ¶ 125.)  On January 7, 2016, the SRO issued a decision reversing the IHO's decision in its entirety.  (*See* Rushfield Aff'n Ex. C ("SRO Decision"); *see also* Compl. ¶ 126.)  With respect to the statute of limitations regarding the IDEA claims raised for the 2011–2012 school year, the SRO rejected Plaintiffs' argument that their claims had been tolled because of the District's withholding of material, saying that the hearing record showed "that the [P]arents knew or had reason to know about the student's attendance issues and behaviors," and that Plaintiffs were aware of most of the information underlying their claims "as of the February 2012 CSE meeting at the latest."  (SRO Decision 13–14.)  The SRO did not address the IHO's decision not to consider the Section 504 or ADA claims.  (*See* Compl. ¶ 126.)

C.  Procedural History

Plaintiffs filed their Complaint in this Action on April 27, 2016, raising the same IDEA claims asserted in their administrative due process claims and rejected by the SRO, and also

asserting the Section 504 and ADA claims that the IHO declined to consider. (*See* Compl.)

Defendant filed its Answer on June 17, 2016, (*see* Dkt. No. 9), after which Defendant filed a letter requesting a pre-motion conference to set a schedule for the ordinary summary judgment motion practice that occurs in IDEA cases, (*see* Dkt. No. 11). After the Court scheduled the conference, Defendant wrote another letter requesting that the Court also take up at the conference a motion by Defendant to amend its Answer to include a statute of limitations defense to the Section 504 and ADA claims. (*See* Dkt. No. 14.)

The Court thereafter held a conference on September 23, 2016, (*see* Dkt. (minute entry for Sept. 23, 2016)), wherein Defendant expressed a desire to move for Judgment on the Pleadings with respect to the Section 504 and ADA claims asserted as the Fourth and Fifth causes of action in Plaintiff's Complaint. Upon request by the Court, Plaintiffs submitted a letter on September 30, 2016, outlining their arguments for why the Section 504 and ADA claims— which are subject to a three-year statute of limitations, relate to events in 2012, and were not filed until 2016—are not time barred. (*See* Dkt. No. 16.) Defendant filed a response on October 3, 2016, (*see* Dkt. No. 17), and filed its Amended Answer with counterclaims on October 6, 2016, (*see* Dkt. No. 19). The Court thereafter set a briefing schedule for Defendant's Motion for Judgment on the Pleadings, (*see* Dkt. No. 22), and Plaintiffs filed their Answer to Defendant's counterclaims on October 24, 2016, (*see* Dkt. No. 23). The Motion was fully briefed on January 19, 2017.

## II.  Discussion

### A.  Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Procedure is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *See*

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 324 (2d Cir. 2011). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Furthermore, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res. Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, when adjudicating a motion to dismiss, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

B.  Analysis

1.  Materials Considered

Before discussing the merits of the pending Motion, the Court must resolve a dispute regarding what materials it may consider in this Motion. Defendant has offered, in support of its argument, quotations and excerpts from the IHO's and SRO's respective opinions, (*see* Mem. of

Law in Supp. of Mot. for J. on the Pleadings as to the Pls.' Fourth and Fifth Causes of Action

("Def.'s Mem.") 4 (Dkt. No. 29)), but Plaintiffs object to Defendant's allegedly impermissible

attempt "to privilege the determination of the SRO decision currently before this Court on appeal

for the alleged truth of its substantive content," (*see* Mem. of Law in Opp'n to Def.'s Rule 12(c)

Mot. for J. on the Pleadings as to the Pls.' Fourth and Fifth Causes of Action ("Pls.' Opp'n") 14–

16 (Dkt. No. 34)).

It is not clear to the Court what the disagreement on this issue is. There is no apparent

dispute that the Court is permitted to consider the IHO and SRO decisions on this Motion, as

they are both incorporated by reference in the Complaint (which cites to them extensively), *see*

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (noting that a document

is incorporated by reference where the complaint makes "a clear, definite and substantial

reference to the documents" (internal quotation marks omitted)), and are public filings of which

judicial notice may be taken, *see Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)

("Judicial notice may be taken of public filings . . . ."); *see also Golden Hill Paugussett Tribe of*

*Indians v. Rell*, 463 F. Supp. 2d 192, 197 (D. Conn. 2006) ("Among the matters of which courts

may take judicial notice are decisions of an administrative agency." (internal quotation marks

omitted)); *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y.

2002) ("[T]he [c]ourt may take judicial notice of the records of state administrative procedures,

as these are public records . . . ." (internal quotation marks omitted)). Plaintiffs' contention that

"the federal rules are clear that only those facts in the annexed records that are undisputed may

be considered in the determination of the narrow statute of limitations motion" is without any

citation. (Pls.' Opp'n 15–16.) The Court's best guess is that Plaintiffs intend to invoke the

Second Circuit's instruction that consideration of materials outside of the complaint is proper

only if "no dispute exists regarding the authenticity or accuracy of the document," and it is clear "that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). That precedent has no application here, however, as there is no dispute that the IHO and SRO decisions attached to Defendant's declarations (as well as Plaintiffs' declaration) are authentic, accurate, and relevant.

To the extent Plaintiffs object to Defendant's use of the conclusions in those decisions, that argument goes to the issue of collateral estoppel, discussed below. Importantly, Defendant has not asked the Court to consider the SRO decision for its truthfulness or correctness, but merely for its preclusive effect. It would be undisputedly improper for the Court to assume a fact is true simply because an extrinsic document proclaimed it to be, but that is not the basis for Defendant's invocation of the SRO decision. As discussed in greater detail below, the issue is whether the SRO's findings regarding Plaintiffs' knowledge of the operative facts of the IDEA claims have preclusive effect or are otherwise entitled to deference. Accordingly, Plaintiffs' objections to the consideration and use of the extrinsic documents offered by Defendant are without merit.

### 2. Time of Accrual

Turning to the merits of the Motion, although the Parties dispute whether the claims were equitably tolled during exhaustion of administrative remedies, the threshold question is when Plaintiffs' Section 504 and ADA claims accrued. The Section 504 and ADA claims are subject to a three-year statute of limitations, *see Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *3 (S.D.N.Y. Sept. 26, 2006), so if Plaintiffs have plausibly alleged that their claims did not accrue until 2014, then the applicability (or inapplicability) of equitable tolling is irrelevant at this stage, as the claims would be timely regardless. According to Plaintiffs, these

claims did not accrue until 2014, when Plaintiffs received discovery in the administrative

proceeding that revealed, for the first time, the extent of C.T.'s exclusion from regular school

activities.  (*See* Pls.' Opp'n 9.)  More specifically, Plaintiffs contend that it was not until 2014

that they learned that C.T. had missed 197 classes during his seventh grade year, ate alone in the

cafeteria, wandered the halls without supervision, and was considered by his teachers and aides

to be in serious need of intervention.  (*See id.* at 10.)

Defendant makes no attempt in this Motion to argue the substance of Plaintiffs'

allegations, instead contending that the SRO's determination that Plaintiffs were on notice in

2012 of the issues C.T. faced at school is binding on this Court unless and until the Court

overturns the SRO's decision.  (*See* Def.'s Mem. 4–5; Reply Mem. of Law in Supp. of Mot. for

J. on the Pleadings (or, Alternatively, for a Summ. J. Under Fed. R. Civ. P. 12[d] and 56) as to

the Pls.' Fourth and Fifth Causes of Action in the Compl. ("Def.'s Reply") 4–7 (Dkt. No. 36).)

Defendant also argues that because Plaintiffs previously pled (in their Complaint) that the

accrual of the claims arising out of the 2011–2012 claims were subject to equitable tolling, they

cannot now make "new allegations" through their opposition brief that those claims did not

accrue until 2014.  (*See* Def.'s Reply 3–4.)

The Court will address Defendant's second argument first.  Plaintiffs have made no

arguments inconsistent with the allegations in their Complaint, and in fact, as Defendant seems

to recognize in its reply papers, Plaintiffs' argument regarding accrual is consistent with their

argument before the SRO about whether the statute of limitations for the IDEA claim was tolled

as a result of Defendant's conduct.  (*See* Reply Aff'n in Supp. of Mot. for J. Under FRCP 12(c)

as to Pls.' Fourth and Fifth Causes of Action in the Compl. ("Reply Aff'n") ¶ 8 (Dkt. No. 35)

(citing Compl. ¶ 130).)  Regardless of whether the argument is couched in terms of tolling or

accrual, there is little dispute that the substance of this argument has been consistently raised by Plaintiffs. And Plaintiffs were not required to plead their legal theory of why the claims are not untimely; "complaints need not anticipate, and attempt to plead around, potential affirmative defenses." *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010) (internal quotation marks omitted); *cf. Gleis v. Buehler*, No. 11-CV-663, 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012) ("[I]t is inappropriate to include legal argument and briefing within a complaint . . . .").

Defendant's contention (in its reply affirmation) that Plaintiffs' position now is in contradiction with its allegation in the Complaint that the Action was "timely commenced within four months after the date of the SRO decision rendered on January 7, 2016" is lacking in merit. (*See* Reply Aff'n ¶ 3.) The IDEA requires that parties who wish to bring a civil action challenging a state administrative agency's decision do so within either 90 days of the date of decision or within such time as the applicable state law allows. *See* 20 U.S.C. § 1415(i)(2)(B). New York provides that in such circumstances, a party has four months from the date of the agency's decision in which to bring a civil action challenging the agency's determination. *See* N.Y. Educ. Law § 4404(3)(a). Plaintiffs' allegation of timeliness is an unambiguous recognition of the four-month time constraint imposed by New York law, and not a concession that the claims accrued in 2012. Defendant's suggestion otherwise is therefore misplaced.

Upon closer inspection, the real argument being made by Defendant is that Plaintiffs objected to consolidating the pending Motion with Defendant's anticipated motion for summary judgment regarding the IDEA claims (which were adjudicated by the IHO and SRO) on the ground that resolution of the pending Motion would not implicate the issues raised by the IDEA claims and would more efficiently streamline the litigation. (*See* Reply Aff'n ¶¶ 11–12; *see also*

*id.* Ex. C.)  Now, Defendant argues, because Plaintiffs have offered a new rationale for why their Section 504 and ADA claims are timely, the efficiency of the proposed disposition is more complicated.  In Defendant's view, because the SRO has decided that Plaintiffs' IDEA claims, which are based on the same factual predicate as the Section 504 and ADA claims, were untimely, the Court is bound by that decision unless and until it overrules the SRO's decision, presumably on a motion for summary judgment.  But no such motion is currently before the Court, and so the Court is left in the awkward position of trying to determine the timeliness of claims whose factual basis is identical to claims that have already been held as untimely in a decision currently on appeal to this Court.

Defendant's argument is premised on the legal doctrines of res judicata and collateral estoppel, and Defendant points out that courts have applied these doctrines in the IDEA context. (*See* Def.'s Mem. 4 (citing *C.L. v. Scarsdale Union Free Sch. Dist.*, 913 F. Supp. 2d 26, 40 (S.D.N.Y. 2012); *K.B. v. Pearl River Union Free Sch. Dist.*, No. 10-CV-9170, 2012 WL 234392, at *5 (S.D.N.Y. Jan. 13, 2012).)  But Defendant's attempt to give preclusive effect to the unreviewed findings and conclusions of the SRO is unavailing.  Under federal law, judgments of state courts are given preclusive effect in federal courts by way of 28 U.S.C. § 1738, which provides that "judicial proceedings" of a state "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such [s]tate."  *See Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000) (citing § 1738 as the basis for giving preclusive effect to judgments of courts in New York).  "[N]either arbitrations nor administrative adjudications," however, "are state-court judgments within the coverage of [§] 1738."  *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (noting that the rule differs with respect to § 1983 actions, where "state

administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state"); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794 (1986) ("28 U.S.C § 1738 governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to the unreviewed state administrative factfinding at issue in this case.").  And common law principles of collateral estoppel do not aid Defendant, as the Second Circuit has held that even under common law, an unreviewed state administrative decision has no preclusive effect on ADA claims, *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 735 (2d Cir. 2001) ("[T]o the extent [the plaintiff's] employment discrimination claims were based on the ADA, the determinations of the [New York State Division of Human Rights] would have had no effect on subsequent federal litigation."), and at least one court in the Second Circuit has held similarly with respect to Section 504 claims, *see Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d 397, 405 (E.D.N.Y. 2006) (holding, in the context of a Section 504 claim, that "it is well-settled that unreviewed administrative determinations have absolutely no preclusive effect on discrimination claims in federal court").  Unsurprisingly, *none* of the cases cited by Defendant involves a federal court giving preclusive effect to the unreviewed decision of an IHO or SRO.  *See Scarsdale Union Free Sch. Dist.*, 913 F. Supp. 2d at 40 (giving preclusive effect to a prior federal civil action adjudicating an identical Section 504 claim); *Pearl River Union Free Sch. Dist.*, 2012 WL 234392, at *4–5 (upholding an SRO's invocation of res judicata where the plaintiff had already litigated identical claims in an earlier administrative proceeding); *Grenon v. Taconic Hills Cent. Sch. Dist.*, No. 05-CV-1109, 2006 WL 3751450, at *6 (N.D.N.Y. Dec. 19, 2006) (same).

Moreover, res judicata serves to bar later litigation only "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the

same parties or their privies, and (4) involving the same cause of action." *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (alteration and internal quotation marks omitted).[1]  Plaintiffs' Section 504 and ADA claims were not litigated before the IHO or SRO, and thus the administrative proceeding did not "involve[] the same cause of action."  Nor could the claims have been raised in the administrative proceeding, as the IHO declined to weigh in on the merits of the Section 504 and ADA claims, (*see* Interim Decision), and res judicata has no application where, as here, a claim was dismissed for lack of jurisdiction, *see St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) ("[A] dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect.").

But notwithstanding the inapplicability, at this stage, of any common law preclusion rules, the Court understands the conundrum raised by Defendant.  In an ordinary IDEA case in which Section 504 or ADA claims are also brought, if the IHO or SRO did not adjudicate the Section 504 or ADA claims arising from the same course of conduct, the reviewing court would address the Section 504 or ADA claims as it would any other claim for relief.  *See D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494, 516 (S.D.N.Y. 2013) ("Unlike the quasi-administrative standard for summary judgment that applied to analysis of the IDEA claim, the ordinary standard for summary judgment applies to the Section 504 claim."); *Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) ("Unlike in the case of [the] [p]laintiff's IDEA claim, summary judgment is appropriate in the case of their [sic] Rehabilitation Act claim only if there is no genuine issue as to any material fact." (internal

---

[1] As the Second Circuit has recognized, "[t]he terminology of preclusion law can be confusing."  *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 n.5 (2d Cir. 2006).  Like the Second Circuit, however, the Court will "use the term 'res judicata' in its narrow sense, as a synonym for 'claim preclusion.'"  *Id.* (italics omitted).

quotation marks omitted)). This ordinarily poses no problem because "[t]he scope of protection under [Section 504] differs from that under the IDEA" in that "Section 504 offers relief from discrimination, whereas [the] IDEA offers relief from inappropriate education placement, regardless of discrimination." *D.C.*, 950 F. Supp. 2d at 518 (internal quotation marks omitted); *see also Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010) ("Section 504 relief is conditioned on a showing of discrimination, which requires something more than proof of a mere violation of [the] IDEA—i.e., more than a faulty IEP." (alteration and internal quotation marks omitted)).

Here, however, the posture of this case frustrates any such simple distinction. At issue on this Motion is not the *substance* of the Section 504 and ADA claims, but their *timeliness*. If the SRO was correct that Plaintiffs' IDEA claims relating to the 2011–2012 school year were untimely because they accrued by the end of that school year, that conclusion likely would apply with equal force to the Section 504 and ADA claims, which arise out of the same factual predicate as the IDEA claims. Indeed, the precise argument raised here—whether Plaintiffs were not on notice of the nature and extent of Defendant's alleged misconduct until 2014—was considered and rejected by the SRO. (*See* SRO Decision 13–16.) The Court must thus decide what deference, if any, is owed to the SRO's decision on this point, and how such deference impacts the disposition of the Motion.

In the context of IDEA cases, the general rule is that some measure of deference is owed to the conclusions of the SRO because the Court "is not an expert on education or childhood learning disabilities." *S.A. ex rel. M.A.K. v. N.Y.C. Dep't of Educ.*, No. 12-CV-435, 2014 WL 1311761, at *1 (E.D.N.Y. Mar. 30, 2014); *see also L.K. v. Dep't of Educ. of the City of N.Y.*, No. 09-CV-2266, 2011 WL 127063, at *1 (E.D.N.Y. Jan. 13, 2011) ("The SRO's findings of fact are

due appropriate deference by this Court, which is not an expert on education or childhood learning disabilities."). The Second Circuit has held, however, that while deference is generally owed to the SRO's decision, the level of deference depends on the type of issue being decided, *see M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012) (holding that "the weight due administrative determinations" "will vary based on the type of determination at issue"), and courts have accordingly held that "the question of the weight due the administrative findings of fact[] should be left to the discretion of the trial court," *M.S. v. N.Y.C. Dep't of Educ.*, No. 13-CV-3719, 2013 WL 6028817, at *4 (E.D.N.Y. Nov. 13, 2013) (internal quotation marks omitted); *see also R.H. v. Bd. of Educ. of Saugerties Cent. Sch. Dist.*, No. 16-CV-551, 2017 WL 401237, at *2 (N.D.N.Y. Jan. 30, 2017) (same). Thus, "[a]lthough [the Court] must give due weight to the state proceedings, mindful that [it] lack[s] the specialized knowledge and experience necessary to resolve questions of educational policy, [it] need not defer to the findings of state administrative officers on questions . . . that fall outside of their field of expertise." *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 456–57 (2d Cir. 2014) (citation and internal quotation marks omitted).

Here, the question of when Plaintiffs' claims accrued does not implicate the SRO's "greater educational expertise." *M.H.*, 685 F.3d at 246. Accordingly, where "the issue on review is the application of the IDEA's statute of limitations," the Court is called upon "to interpret the statutory provisions and the law regarding claim accrual," which "does not implicate educational policy decisions." *K.H. v. N.Y.C. Dep't of Educ.*, No. 12-CV-1680, 2014 WL 3866430, at *15 (E.D.N.Y. Aug. 6, 2014). Because issues regarding when the statute of limitations began to run "fall within the purview of the lawyer's expertise, not that of the educator," *id.* (internal quotation marks omitted), deference is not owed to the SRO's

determination regarding the accrual of Plaintiffs' claims, whether under the IDEA, Section 504, or the ADA, *see id.*; *see also R.B. ex rel. A.B. v. Dep't of Educ. of City of N.Y.*, No. 10-CV-6684, 2011 WL 4375694, at *3–4 (S.D.N.Y. Sept. 16, 2011) (noting, in the context of an IDEA claim in which a statute of limitations defense was raised, that "where the administrative decision concerns an issue of law, the district court need not adhere to the *Rowley* rule of deference," and reviewing the statute of limitations issue de novo), *reconsideration denied*, 2012 WL 2588888 (July 2, 2012), *mot. to set aside judgment denied*, 2013 WL 1890263 (Apr. 11, 2013). This conclusion accords with the Second Circuit's instruction that where deference is due to a state administrative agency, "it is not because of the factfinder's status as a state agency, but because of the factfinder's inherent expertise on technical matters foreign to the experience of most courts." *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 327 (2d Cir. 1998), *vacated*, 527 U.S. 1031 (1999).[2]

Thus, contrary to Defendant's suggestion, the fact that the SRO found that Plaintiffs' IDEA claims—and, by extension, their Section 504 and ADA claims—accrued in early 2012 is neither dispositive nor entitled to deference in this case. The SRO employed no educational expertise in deciding the time of accrual for Plaintiffs' claims, and Plaintiffs are entitled to have this Court adjudicate that question.

With this background in mind, the Court turns now to the substance of Plaintiffs' argument—that their Section 504 and ADA claims did not accrue until 2014. Section 504 and

---

[2] *Bartlett* was vacated by the Supreme Court on other grounds because of a change in law, *see* 527 U.S. 1031, but on remand, the Second Circuit reaffirmed its holding regarding the deference owed to state administrative agencies, *see Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 78 (2d Cir. 2000) ("[F]or the reasons stated in [the prior opinion], we hold that the Board is not entitled to deference on the question of whether [the plaintiff] suffers from a disability under the ADA and the Rehabilitation Act . . . .").

ADA claims accrue when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). "[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992) (internal quotation marks omitted).

As Plaintiffs point out, (*see* Pls.' Opp'n 9), they have alleged in numerous places in their Complaint that Defendant withheld information from them that would have alerted Plaintiffs that C.T. was suffering an injury actionable under Section 504 or the ADA. In particular, Plaintiffs allege that they were unaware until 2014 that:

> -teachers and staff knew that C.T. was struggling and admitted as much in internal communications, (*see* Compl. ¶¶ 41–42);

> -C.T.'s school counselor privately expressed his concern to the chair of the Committee on Special Education that C.T. was not functioning well in a mainstream setting and needed a therapeutic placement, (*see id.* ¶ 76);

> -C.T.'s aide made extensive notes indicating that C.T. struggled greatly in the classroom, (*see id.* ¶¶ 78–79);

> -C.T. made comments to his guidance counselor that, among other things, he "wanted to kill somebody," (*see id.* ¶ 82); and

> -C.T. frequently wandered the halls and missed a total of 197 classes during the 2011–2012 school year, (*see id.* ¶¶ 83–84).

Defendant makes almost no effort to rebut any of these allegations or to argue that they are insufficient at this stage to plead that Plaintiffs' claims accrued in 2014, when they became aware of the above information.

There are serious questions about Plaintiffs' ability to establish the timeliness of their claims. For instance, the SRO pointed out that much of the information regarding the classes C.T. missed and his behavioral problems was either available online or was provided to Plaintiffs

at various times during the year. (*See* SRO Decision 14.) And while Plaintiffs allege that they did not know "the extent" to which C.T. would leave the classroom unsupervised, (*see* Compl. ¶ 83), they do allege that Defendant acknowledged "directly" to them that "C.T. was not able to access his education, frightened and alienated other students, and wandered the halls much of the day," (*id.* ¶ 52). Moreover, as Defendant points out, Plaintiffs were surely aware that C.T. had been prohibited from riding the school bus during the 2011–2012 school year. (*See* Reply Aff'n 3 n.1.) But as Defendant has not otherwise contested the merits of Plaintiffs' claim for delayed accrual of their Section 504 and ADA claims, and as the Court must take Plaintiffs' allegations as true at this stage of the proceeding, the Court finds the allegations in the Complaint sufficient to plausibly allege that Plaintiffs' Section 504 and ADA claims did not accrue until they obtained discovery from Defendant in 2014 in connection with the due process complaint. *See K.H.*, 2014 WL 3866430, at *19 (recognizing that other courts have held that "IDEA claims [do] not accrue until the family gain[s] new information that ma[k]e[s] them aware of inadequacies in the student's prior special education program" and holding that the plaintiff's claim did not accrue until he was evaluated as being in need of additional educational services); *BD v. DeBuono*, 130 F. Supp. 2d 401, 426 (S.D.N.Y. 2000) (holding, in the context of a Section 504 claim, that "when [the] plaintiffs knew or could have known that they were aggrieved parties present[ed] an issue of fact").

Because Plaintiffs have plausibly alleged that their claims accrued in 2014, the Court need not reach the question of whether any equitable tolling applies to Plaintiff's claims, as their claims would have been timely even if no equitable tolling applied.

## III. Conclusion

For the foregoing reasons, Defendant's Motion is denied. Because discovery is needed in order to ascertain the timeliness of both the IDEA claims and the Section 504 and ADA claims relating to the 2011–2012 school year, within 30 days of the date of this Opinion & Order, the Parties are to submit a proposed discovery schedule. Briefing on any motions for summary judgment with respect to the IDEA claims will be stayed until the Parties have had an adequate opportunity to conduct discovery with respect to the timeliness of those claims. The Clerk of Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 24.)

SO ORDERED.

DATED:     June ⎵ , 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22